May it please the court, my name is Shane Carew and I represent the appellant, the estate of Carl Ozzie and Angela Elam. The ad's issue today is, it can be summarized in the court's, the last sentence of the court's opinion which was, in this case, the interest in resolving a dispute after hearing from both sides is outweighed by the interest in finality. That would, that runs contrary to the Ninth Circuit precedence which can be summarized best perhaps in Community Dental Services versus TANI. Judgment by default is an extreme measure and a case should, whenever possible, be decided on the merits. As a default case, as with so many things in life, timing is everything. So I will briefly go through the significant dates here of it. In May 1999, the appellee, Mr. Moran, bought at a Marshall sale Mr. Ozzie's fishing boat. Also in May of 1999, the National Park Service was authorized to develop a compensation program to distribute $23 million. That compensation program dealt with compensating commercial fishermen who had fished in Glacier Bay National Park and compensating them for an effort to get the commercial fishermen out of the waters of Glacier Bay National Park. That was May of, both of those events happened in May of 1999. In December of 1999, Mr. Moran called Mr. Ozzie and asked to purchase, and did purchase for $3,000 fishing rights which had attached to the vessel, fishing rights or history that attached to the vessel related to ground fish fisheries that had nothing to do with the crab fisheries in Glacier Bay National Park. The deadline date for applying for those ground fish rights was December of 1999. And I think I may be able to help you be efficient. That's now the merits of the lawsuit, which we didn't get to. I'm willing to assume for purposes of the argument that you've got a plausible case on the merits. Okay. So assuming that, let's go to the various attempts to serve us and so on that are actually the primary case. Okay. Yes, Your Honor. In December of 2001, which is two years after the sale of these rights, Mr. Moran had sent a certified letter to Mr. Ozzie's home. And that was returned, signed, and received. In January of 2002, one month later, he filed suit in state court in order to find out from the state what the catch records for the crab fishery was. Of course, the judge kind of focused on the prior conduct, didn't he, in answering his decision? He focused on the fact that there had been attempts of prior service and that your client had been unavailable or couldn't be found. Didn't you focus a little on that or a lot? Yes, Your Honor. That service happened actually after that. I understand. They finally came back to court and said, we can't find him or he won't respond to the service, so we want a service by publication. That's how you finally got him. Yes. So what's the significance of the finding the judge made about how your client was trying to allegedly avoid service? Well, to that, Your Honor, the efforts and the judge abused discretion there in that under both Alaska and Washington law, there had been insufficient attempts to serve Mr. Ozzie when the first service was ineffective. This is federal law, so the question is whether he properly attempted to serve or whether there was proper service under federal law, right? Yes, Your Honor, but I believe that federal law adopts and looks to the state law with respect to service and whether service is effective, and we adopt state law for how to implement service, how to effect service. And the first time around, there's no dispute, I think, that the service, while accomplished, was ineffective because there was no return date? Correct. And the second attempt is unsuccessful in the method of the patient? Yes. I've got that right? Correct. Which leads to the 60B on setting aside the defaults. So what's the standard on 60B that we should look at? The standard is abuse of discretion. Is that what you're looking at? Yeah, and what factors should we look at to determine whether the judge abused his discretion? It seems as though he focused on the conduct of your client in trying to avoid service and did not possibly go through all the factors necessary in considering the 60B. Is that your position? Yes, Your Honor. If you could explain it for us, please. Okay. There is, first of all, Your Honor, under the case law, even if there had been service, the testimony of my client before he passed away was that he did not remember being served, and subsequently we provided an explanation of why somebody or how somebody could not remember being served. Then Ms. Moran, when obligated now to effect service again, was obligated under state law, either Washington or Alaska state law, to make a diligence attempt, and Moran did not make a diligence attempt to find Mr. Ozzie. Mr. Moran knew how to contact Mr. Ozzie's daughter and knew how to contact, and Mr. Moran was actually directly in contact with Mr. Ozzie's agent on several occasions. And under either Washington or Alaska law, Mr. Moran did not pursue that. Consequently, when he did not make his diligent effort to effect service, the service by publication should therefore be ineffective. Now, and then after that, was it a month and a half or so after he was served before he answered? No, Your Honor. It was only when Mr. Ozzie discovered that the funds had not been transferred to his, the $600,000 had not been transferred to his account, he called the National Park Service and said, Where's the money? You sent me the letter saying that you're going to send the money. He learned that on about March 18th or 19th, and on April 11th he moved to set it aside. And then the delay in all goes to the culpability of his actions, is that right? We're supposed to see what the excuse was, and is your pitch that it was his illness that prevented that from him responding to the service? Well, the pitch actually, Your Honor, is that the service was never actually accomplished. You're saying that the publication is no good? Yes, Your Honor. Oh, okay. Because the publication has to be premised upon the fact that there was a diligent effort on the part of the party to serve the person, and where there was, where he knew. Well, I'm lost. If this is 60B, you're seeking to excuse yourself from the default, not attack the service. Maybe I'm mixed up here. Well, the, I guess it's all intertwined. Well, I'm not sure. I mean, if you're trying to quash service, you should have tried to quash the service, and you didn't do that. Then it was the default issue. Now you're trying to set the default aside under 60B. So I don't know we're trying to hear a quash of service now, are we? Because it was improper by publication. Maybe I missed something. No, Your Honor, it's, okay, we're trying to set aside the default because the court had relied upon, essentially had relied upon the initial ineffective service. That was the premise upon which he entered default, and he basically related back to that. Was there any hearing on this, the adequacy of the efforts by the professional process service, the ABC company? No, Your Honor. Was there any finding as to what they did or whether it was adequate? Because what you're doing is making a collateral attack on the service efforts that were the foundation for the order of publication. Before you can get an order of publication, you have to show due diligence in an effort to find the person you're trying to serve. Now you're, after you've slept through all that and had a default judgment, you want to set aside the service. So you have to, in order to show that the trial judge was abusing his discretion, you have to show that something was presented to him on which he would exercise his discretion. So what did you present to the trial court to cause him to exercise his discretion? Your Honor, the, what we had submitted was the affidavits of Carl Lassie with respect to what he had received and what he had not received, and then made the argument based on the affidavits that had been in the record, the affidavit of service plus the affidavit of Olivia Olsen stating that Mr. Moran knew how to contact Mr. Ossie through her. So we submitted that. We submitted the affidavit also of Angela Elam, his daughter, who had said that Mr. Moran had known how to reach her through Angela Elam. Well, what you're saying is that the judge abused his discretion because he was clearly erroneous when he found that the defendant's willful disregard of service of the first complaint supports the denial of the motion set aside and the fact that even in the failure to provide a deadline for response and makes the service ineffective or incomplete, Morgan's diligent efforts to serve Morgan on the second time are sufficient to support the default judgment. You're saying that was an erroneous finding and abuse of discretion? Yes, Your Honor. Okay. Now, you've just run over, although we've taken you over. Why don't we hear from the other side, and then we'll give you a chance to respond. Thank you, Your Honor. All right. May it please the Court, Bruce Weirach, attorney for Tony Moran. All right. Tell me why what the judge found there is an abuse of discretion. He seemed to concentrate only on the conduct or the perceived conduct of Mr. Assi to avoid service. In other words, they're chasing him around Washington trying to serve him. Serve him once, it was defective, so then they went for publication. Didn't the judge have to go further on a 60B in determining the equitable factors when he's considered setting aside the default? First of all, it should be noted that Mr. Assi was personally served with the complaint. He had the complaint. He was personally served. But it was a defective service. What was defective was that in the summons it says you have 20 days to respond to the complaint. Regardless, they had to go back and get a publication order. But you're saying that defective service put him on notice and therefore anything after that shows his culpability in trying to willfully avoid service? No. What we're saying is that, first of all, his address was known and he had been served with a certified envelope where it had been accepted previously. The process server went to the same address and served him with a complaint. He had the complaint. He knew the substance of the complaint. When the process server went back and it looked like to the process server that he was secreting himself away and mail that already had been previously accepted at the same very address he had been already served was rejected or refused, that is all in the affidavit in the record and the court found that there was due diligence in serving him, first of all. Then there was publication. Unexcusable neglect, which is part of 60B, right? Didn't he say he was sick? He was taking prednisone. He really wasn't sure what he was doing? Well, did the judge consider that? I didn't see that in the judge's order. Right. What he said is at Supplemental Exhibit 12, which was included in the original supplement excerpt of record, that's where the court's order does find that there's no, he says, no good cause shown because all of a sudden all these arguments started, well, that one didn't work, so we'll not try this new one that he had asthma. Well, that one didn't work, we'll try, well, he was tired. Now, at these addresses where Mr. Ozzie was, none of these was his home, is that right? It was daughter's home and so on? That's not exactly clear, but I think that's where he was receiving his mail, his daughter's home. That's right. So the address where he was first served with the imperfect service, because he didn't have the right return date, this was not his home. He was at his daughter's, correct? That's where the process server personally served him. Correct. So when the process server comes back, he's not coming to Mr. Ozzie's home, he's coming to his daughter's home. What does the person there tell him when he comes back with the service that if affected had been good service? And that also is in the record where the process server advises the court that, well, he's either not answering the door, she or he, or somebody's not answering the door, they don't know where he is or he's moved. You know, it's the intuitive sort of rule. Wait a minute. Those are different things. They didn't answer the door and they're told that he's moved. I may not have understood you properly. Right. In terms of the affidavit of the process server where they come back and make multiple attempts, that's part of the court's finding where there's due diligence. On the second service, of which there are several attempts, tell me what the process server is told by a human being. In the ABC process server's affidavit? Yeah. I'd have to get that for the record. I don't have the actual affidavit in front of me, but essentially in summarizing what he said, which is part of the record, at 17, they're basically saying that we do not have, we don't know where he is. You know, it's sort of this furtive sort of behavior once they know that he's already, because he's already been served with a complaint. He's already had it. And the court finds, and Mr. Ossie's no stranger to default judgments in prior litigation. He's a litigious individual. He's already had a default judgment found against him. He knows the implications of complaints and losses. Is that in the record? Yes, it is, Your Honor. That's in the record at Supplemental Exhibit 1. He already had a default judgment against him. And that's part of the, where this, and the Hammer test, where the culpable conduct led to the default. Here's why this is a hard case, and I'm sure you understand why this is a hard case. There's a first service that's improper because the return date's not right. The second service is only about publication. And now we have a default judgment that if Mr. Ossie's right on the merits, and I say if, your client purchased something worth over half a million dollars for $3,000. And you want to get that by default. You don't really want to get to the merits on that question. That's why this is a hard case. Well, the court looked at all these factors, and whether he was responsible for the default under the Hammer test, and that's culpable conduct leading to the default. He was personally served. He knew about the lawsuit. He was personally served with imperfect service. With failure to say, you have 20 days to respond. But he wasn't, he was not, he was on notice of the complaint and the lawsuit. He was also served, and there was willful disregard of this service. The court found that at page 8 of tab 16 of the record. Willful disregard of the first service? And of responding to the complaint. That's correct. Willful disregard after the service by publication to respond. You're talking about the fact that he received constructive notice of the filing complaint and failed to answer, and that his conduct is culpable? Is that where the judge went? That's correct because it's part of the third factor. But doesn't that assume that he saw the publication in the Seattle Daily Journal of Commerce? It wouldn't be willful if he never saw it or never knew about it. If he never saw the publication, that's part of the publication notice that the court and the law allows. But he did, again, have notice of the complaint. He had it personally served upon him. That's where I'm trying to zero in. You're saying that because the first complaint, even though it was defectively served, he had it in hand. That gave him constructive notice of the filing and the action, and that's where the culpability that the judge may have zeroed in on is not an abuse of discretion based upon the first service. I think it's a cumulative sort of behavior, culpable behavior, by Mr. Ossian. Well, then you've got to consider whether or not that was willful conduct in the sense that he said, I'm sick. I don't see anything in here about the judge discussing the illness. Yes, he does. Supplemental Exhibit 12. He says there's shifting positions. Hang on a second. Supplemental Exhibit 12. I've got the excerpts of record, and where do I go? This is Appellate Supplemental Excerpt. This is one of the court's orders. It wasn't included in the original excerpt of record filed with the court. This little thin one? Yes, Your Honor. Where do I look? Supplemental Excerpt Page 12. This is where, at the very, very late stage, Mr. Ossian comes in and says, well, I have asthma, and the assertion that asthma rendered it impossible doesn't – it doesn't – all this comes in very late. First of all, Mr. Ossian's contention is, oh, I don't remember being served, and the court discusses that in its opinion. So, anyway, I think that's where this all comes into play. This is sort of the court recognizes, well, you want to get out of default because you didn't know about it even though you were served. You want to get out of default because there was service by publication. You want to get out of default because you don't remember being served. You want to get out of default later because, oh, gee, I have asthma. I mean, the court doesn't see it. What he says, it's no good cause shown here on all of this. That's the sort of the cumulative behavior here that underlies the discretion that Judge Sedgwick had chosen. I noticed in that last order that Judge Sedgwick had asked the parties to make some attempt at settlement, which had failed, right? Yes, Your Honor. You guys decided to stand on the default judgment and say, come and get us. Well, you can beat your head against the wall and so on and that sort of thing. I think the parties did exercise good faith efforts to do all of that. Well, I don't think it's relevant to us as to why a settlement might have failed. Thank you, Your Honor. Thank you. Your Honor, there would be only several points, three or four points, where I'd like to correct the record, and that would be the process server, the second time, did not go to Angela Elam's house. He went to another house where the first service was purportedly effective. He did not go to Angela Elam's house. And when he went to that house that he went to, which is a friend of Mr. Ozzie's, when he went to that house, and his affidavit says so, he was told that Mr. Ozzie was at his wife's slash his daughter's. That's in the affidavit. And that's why this is so compelling. And the process server never goes to that house. The process server never went to Angela Elam's house, even after being told that he was at his daughter's house, one. Two, Moran knew where Elam's daughters, I'm sorry, Angela Elam lived. And at what point did you, in your motion to set aside the default, raise the argument of insufficient attempt to justify service by publication? That was in the initial, that was in the first motion, Your Honor, motion to set aside. I see. Okay. So that was part of your first motion to set it to one side. As I'm reading this order that says, but this asthma comes up too late, too little, too late. But the argument that the attempt to justify service by publication to serve the second complaint was insufficient to justify a movement to publication. That argument was made at the outset when you start to set it to one side. Yes, Your Honor. Okay. The, let's see. I'd also like to clarify. There's the, Mr. Weirach refers to another default judgment and refers and says it's in the record. That other default judgment was not a part of the trial court record. It was added to this record on appeal, but it wasn't part of the, and I don't think it was something considered by the trial court judge about, to the extent that it's relevant. And those are the points that I wanted to make, wanted to clarify, Your Honor. Okay. Now, this is slightly irregular. Let me ask, is that correct that the evidence of default in another suit was not given to the trial court but was only attempted to be made here on appeal? Yes, please. It was part of the judicial notice of other litigation that's out in the public realm. So that's why it was added to the record. And have you made a motion for us to take judicial notice? No, Your Honor. I will do that. Okay. Thank you. Would you, Your Honor, I will object to it. You do, of course. No surprises there. Okay. Thank you both for your argument. Moran v. Ossie Elam. Angela Ossie Elam is now submitted for decision.
judges: Goodwin, Brunetti, W. Fletcher